---

ROY *vs.* TARGEE and others, commissioners of the alms-house of New-York.

On an *appeal* to the sessions from an *order of bastardy*, the appellant is not entitled to a *trial by jury.*

The order of a court of sessions, confirming an order of bastardy of two justices directing the payment of *lying-in expenses*, will not be reversed on the ground that no evidence of such expenses was given in the sessions, if no objection to the confirmation of the order on that ground was taken in the sessions; the proof will be deemed as waived.

A court in the exercise of a sound discretion may require counsel to state the substance of evidence offered to be given, so as to enable them to judge of its materiality and relevancy, and a court of review will not control an inferior tribunal in the exercise of such discretion.

The *lying-in* expenses and the *costs* of the order and appeal may be enforced by attachment, where the bond of indemnity executed by the appellant under the order of the sessions provides only against *future* expenses.

CERTIORARI to general sessions of New-York. An order of filiation was made by two special justices of New-York, adjudging Roy to be the father of a bastard child, and he appealed to the sessions. At the July term, 1828, of that court, the parties appeared, and the hearing of the appeal was postponed by consent until the August term; on the first day of which term the parties again appeared, and the cause was set down for hearing on *Friday* of the first week of the term, when the appellant asked to have the appeal tried by a *jury* which was refused by the court. Jane Anderson, the mother of the child, was then examined as a witness. The whole day was spent in her examination and cross-examination, and the further hearing was postponed until the next day, when the appellant applied for an attachment against a witness, without producing proof that she had been subpœnaed, which motion was re-

fused. The appellant made an affidavit that he expected to prove by the witness, against whom the attachment was moved, that a man had been in bed with Jane Anderson about five years previous to the trial, which evidence was offered to impeach her testimony, she having testified that she had never had sexual intercourse with any one besides Roy. The counsel for the appellant admitted that at the time alluded to, Jane Anderson and the person in bed with her were about 16 years of age; the court decided that such evidence would not sufficiently impeach the testimony of the witness, that the appellant must swear that he expected to prove by the witness that the mother of the child had sexual intercourse with a person other than Roy, or the testimony would not be deemed material. The counsel for the appellant then called several witnesses; the court required him to state what he expected to prove by them, so that they might judge of the *materiality* of the evidence proposed to be given, and he refusing so to do, except in general terms, although the witnesses had been examined before the justices on the making of the order, and the court having spent two days exclusively in the hearing of the appeal, they refused to have the witnesses sworn, and on the 9th August, 1828, made an order *confirming* the order of the justices. The order of the justices directed Roy to pay $39,50 towards the lying-in expenses of Jane Anderson, and $1,50 weekly towards the keeping, sustenation and maintenance of the child. The order of the sessions, in addition to confirming the order of the justices, awarded $44,38 costs to the appellees, and directed Roy forthwith to enter into bond, with surety to indemnify the city. The court certify that the appellant raised no question before them, excepting whether he was the father of the bastard child; that no question as to the amount of weekly sustentation, as to the amount of lying-in expenses or advances were raised by the appellant on the hearing of the appeal, and that the sums were fixed and ordered by the court at the same amounts as ordered by the justices. Roy gave a bond with surety, conditioned that he would at all times thereafter save and keep harmless the city from all manner of expenses,

which should or might at any time *thereafter* arise by means of the maintenance, &c. of the child. This bond was executed on the day of the making of the order of the sessions, to wit, on the 9th August, 1828. On the 2nd September, 1828, the court made an order that Roy shew cause why he should not be committed for not obeying so much of the order of the court as related to the payment of the *lying-in expenses*, and the *costs* of the original order and of the appeal, which having been served on him, the court, on the 6th October, 1828, ordered an attachment against him, being of opinion that the bond executed by him being merely *prospective*, was not made in compliance with the order of the 9th August, and if conformable thereto, still that Roy was liable to an attachment for not obeying the order in respect to the above items. The appellant thereupon sued out a *certiorari*.

*G. Wilson*, for plaintiff in error.

*M. Ulshoeffer*, for defendants in error.

*By the Court*, NELSON, J. The first objection to the proceedings below is, that the court of sessions refused a *trial by jury* of the matters on the appeal ; in this the court were right. The general sessions of the peace are " authorized and required to hear and determine such appeal, and to do justice therein according to the merits of the respective cases." 1 R. L. 309, § 9. The first section of the act provides that any two justices of the peace may make an order for the better relief of a town or city from becoming chargeable with a bastard child, charging the mother or reputed father with the payment of money weekly, &c. and on their default in performing the order after notice, shall commit them to jail, &c. except he or she put in sufficient surety to perform said order, or personally appear at the next sessions, &c. and abide such order "as the said justices of the peace or the major part of them in their said sessions shall make in that behalf." Our statute. was taken from the English statutes, 10 Johns. R. 57, under which appeals are heard

and determined by the justices in session, or a majority of them. 1 Burns' Justice, 214, 15, 191.

The second objection is, that Alderman Valentine sat in the sessions, he having been one of the justices who made the order appealed from; this objection is unfounded in fact.

The third objection is, that there was no evidence before the sessions of the expenses of the *lying-in* of the mother of the bastard child, and that such expenses were therefore improperly included in the order of confirmation. The twelfth section of the act, p. 310, requires the sessions on the hearing of the appeal to begin *de novo*, and the party in whose favor the order was made must substantiate the same by evidence, except in case of the death of the mother of the child. There was no evidence before the sessions as to the expenses of the lying-in of the mother, and the order confirmed included a charge of $39,50 for that expense. The return states on this point that the appellant raised no question before the court, excepting *whether he was the father of the bastard child*; that no question as to the amount of weekly sustentation or of expenses of lying-in, or of advances were raised on the hearing of the appeal, and that the sums were fixed at the same amount as ordered by the two justices. The statute no doubt makes it incumbent on the part of the appellees to substantiate this part of the order by proof, else the sessions cannot confirm it; but the appellant may waive it, and I think it is to be inferred from the return that he did so. Whether the appellant was the father of the bastard child or not, was the only point to which the testimony on either side was directed, and if the expense of lying-in was considered questionable, I think an objection ought to have been taken to the order of the justices at or before it was made; if it had been made, no doubt the necessary proof would have been produced. The appellant's objection went to deny all liability, not to question its extent or amount.

The fourth objection is, that the sessions refused to postpone the hearing, and compel the attendance of one Mrs. Close, and also in refusing to hear the testimony offered. The case was postponed from July to August term, and then set down for Friday in the first week, at which time an applica-

tion was made to postpone the hearing further, on account of the health of the appellant and absence of witnesses; but it appeared the appellant was then in court and able to attend to the hearing, and no affidavit of the subpœnaing or materiality of the absent witnesses was offered. An application was made for an attachment against one Ann Close, and for a postponement of the hearing until she could be brought up on the writ, but no affidavit was offered that she had been duly or in any way subpœnaed.

As to the refusal to hear the testimony offered, the sessions, from a belief that there was a disposition to protract unnecessarily the examination on the part of the appellant, called on his counsel to state to them the substance of what he intended or expected to prove. This the counsel declined, and the court refused to hear the witnesses until he did; the counsel did not decline to comply with the order of the court on account of his inability to do so, and it is stated in the return that all the witnesses thus offered, had been examined before the justices. It undoubtedly rests in the discretion of every court in the trial of causes, to require of the counsel to state the substance of the evidence about to be offered by him. The reason of the rule is obvious; it is to ascertain if the evidence is competent and pertinent to the issue or issues to be tried, and thereby prevent the introduction of irrelevant and improper testimony, and to facilitate the trial. In the sound exercise of this discretion, courts should always listen to reasons offered for not making a full disclosure before the examination, and give them their due weight. Many times it is unadvisable to apprise the witnesses about to be examined of the facts expected to be proved; the counsel may not be sufficiently advised of the facts himself—these or any other sufficient reasons for not enforcing the rule, the court take upon suggestion of counsel. In this case no sufficient, nor indeed any reasons whatever, were given by the counsel for withholding from the court the facts expected to be proved by the witnesses, and we therefore think the sessions were right in rejecting them.

The fifth objection is, that the bond to indemnify the city of New-York, made on the 9th day of August, was a perform-

ance of the condition of the recognizance. This objection does not seem to apply to the order of the sessions, but probably refers to the proceedings of the sessions subsequent to the order to collect the monies ordered therein to be paid. The bond given is undoubtedly *prospective*, and does not, nor was it intended to embrace the several sums ordered to be paid by the appellant to the appellees. The condition of the bond is to " save and keep harmless the commissioners of the almshouse, &c. from all expenses, damages, costs and charges whatsoever, which shall or may *at any time hereafter* arise, happen, grow or be imposed upon them by reason of the maintenance, education and bringing up of the bastard child," &c. ; the payment of the *lying-in* charges and the costs might therefore correctly be enforced by attachment.

Upon the whole, after a careful examination of the return and the law applicable thereto, we are of opinion that the order of the sessions should be affirmed. We have some doubt as to the correctness of the order on the main point upon the facts as sworn to by the mother of the child herself, and if sitting as members of the sessions, would be inclined to discharge the order of the two justices on that ground ; but as the sessions have concurred with the two justices upon this point, and as the evidence is contradictory, we are not inclined to disturb it on this ground.